United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EMMANUEL GRANT,

        Plaintiff,

    v.

PENSCO TRUST COMPANY, LLC,

        Defendant.

Case No.  12-cv-06084-WHO

**ORDER GRANTING MOTION TO DISMISS**

Re: Dkt. No. 14

## INTRODUCTION

Plaintiff Emmanuel Grant invested over $600,000 in a fraudulent investment scheme promoted by a fraudster named Garfield Taylor.  Taylor urged Grant to invest in the investment scheme through a Self-Directed Individual Retirement Account ("SDIRA") administered by Defendant Pensco Trust Company, LLC as a non-fiduciary custodian.  In 2010, after an SEC investigation revealed that the investment was fraudulent, Pensco informed Grant that his SDIRA was worthless.  Grant now seeks to hold Pensco liable for his losses on the theory that Pensco violated a duty to ensure the legitimacy of Grant's investment and conspired with Taylor to obtain Grant's money through fraudulent means.  Pensco has moved to dismiss Grant's claims for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).  For the reasons stated below, Pensco's motion is GRANTED. [1]

_____

[1] Judge Alsup recently granted a motion to dismiss a substantially similar complaint filed by the same counsel that is representing Grant in this matter.  Judge Alsup noted that "the complaint in this action is but one of several cookie-cutter complaints filed by plaintiffs . . . . This order is concerned that plaintiffs are filing parallel complaints against defendants until they can find a judge who permits their allegations to survive a motion to dismiss."  *Levine v. Entrust Grp., Inc.*, 12-cv-03959-WHA, 2013 WL 2606407 (N.D. Cal. June 11, 2013).  This Order echoes Judge

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# BACKGROUND[2]

SDIRAs are individual retirement accounts ("IRAs") held by a custodian. Pensco touts itself as a "premier self-directed IRA custodian." Compl. ¶ 11. Investors in SDIRAs are permitted to invest in nontraditional investment options which are not allowed under traditional IRAs. *Id.* ¶ 15. Unlike custodians of traditional IRAs, which are considered fiduciaries of the IRA, custodians of SDIRAs are not fiduciaries. *Id.* ¶ 16.

In 2009, Grant learned of a potential investment opportunity promoted by Taylor and his investment company, Gibraltar Asset Management Group, LLC, through a friend that had also invested with Gibraltar. *Id.* ¶ 24. Grant's friend told Grant that he had consistently received a 20% return on his investments with Gibraltar for over a year. *Id.* Grant contacted Taylor to discuss a potential investment. *Id.* ¶ 25. Taylor explained that Grant could make tax-free investments with Gibraltar through a SDIRA and recommended Pensco to Grant. *Id.* ¶ 26. Taylor told Grant that Gibraltar already had another investment client who had invested with Gibraltar through a Pensco SDIRA. *Id.*

In August 2009, Grant invested $100,000 in cash with Taylor pursuant to a three month promissory note with an interest rate of 25%. *Id.* ¶ 27. Then, in October 2009, Grant invested $683,776.20 from his retirement accounts with Gibraltar, through a Pensco SDIRA. *Id.* ¶ 28. Grant's 2010 first quarter Pensco SDIRA statement reflected that Grant had received $33,673.06 in interest payments from his Gibraltar investments and reported his total value as $717,499.26. *Id.* Pensco charged Grant $443.05 for account administration in June 2011.[3] *Id.*

In reality, Taylor had stolen Grant's money immediately upon receipt and the account statements Pensco had sent Grant did not reflect the actual value of his investment. *Id.* ¶ 31.

---

Alsup's concerns.

[2] For the purposes of this Motion, the Court assumes the truth of the factual allegations in the Complaint.

[3] The Court assumes that Grant means that he was charged $443.05 for account administration in June 20*10*, not 2011.

In June 2010, the Securities and Exchange Commission ("SEC") audited all SDIRAs maintained at Pensco that held investments with Gibraltar. *Id.* ¶ 32. Grant became aware of this investigation when he received a letter in late June 2010 from Pensco advising him that Pensco had devalued his SDIRA to $0. *Id.* ¶ 33. Grant called Pensco to inquire why his SDIRA had been devalued and was informed that Pensco had received a subpoena from the SEC regarding all SDIRAs maintained by Pensco that held Gibraltar investments, and that it was Pensco's policy to "zero out" all SDIRAs under investigation by the SEC. *Id.* ¶ 34. Grant also learned that the $100,000 cash investment he had made with Gibraltar was also worthless. ¶ 35.[4] In April 2011, Grant received a notice from Pensco that his credit card had been charged $204.00 by Pensco for account maintenance on his SDIRA that was then valued at $0. *Id.* ¶ 38.

In November 2011, the SEC charged Taylor, Gibraltar and others with running a $27 million Ponzi scheme that defrauded over 130 investors. *Id.* ¶ 42. Also in November 2011, Pensco advised Grant that Pensco had reduced the value of his SDIRA to $1 and that Pensco was going to close the account without charging a termination fee, but Grant would have to pay any outstanding fees before Pensco would close his SDIRA account. *Id.* ¶ 39. Then, in December 2011, Grant received a letter from Pensco resigning as SDIRA custodian and advising Grant that Pensco was distributing the SDIRA holdings to him and issuing a form 1099-R in the amount of $2.00. *Id.* ¶ 40.

Grant alleges that Pensco knew that Gibraltar was stealing his money and failed to advise Grant, and that Pensco "enabled, aided, abetted and facilitated" this theft by failing to report the accurate value of the SDIRAs and by marketing its services along with promoters of the fraudulent investment schemes. *See, e.g.,* Compl. ¶¶ 45, 47, 59. Grant asserts causes of action for conversion, intentional fraud, conspiracy, violations of the California Unfair Competition Law (Bus. & Prof. Code §17200 *et seq*) and negligent misrepresentation.[5] Grant seeks to represent a

---

[4] In December 2010, Grant directed Pensco to transfer the $32,932.07 he received in interest from his investment in Gibraltar to Grant's non-SDIRA retirement account. *Id.* ¶ 37.

[5] Grant has withdrawn his causes of action for violation of the Consumer Financial Protection Bureau's regulations under 15 U.S.C. Section 78u and constructive trust. Dkt. No. 20 at 15.

United States District Court
Northern District of California

class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) defined as "all persons or entities who invested in or held an investment through a SDIRA administered by Defendant Pensco from January 1, 2006 until the present and that was offered, sold or solicited by the Fraud Promoters."[6]

### LEGAL STANDARD

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party," (*Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008)), drawing all "reasonable inferences" from those facts in the nonmoving party's favor.  *Knievel v. ESPN*, 393 F.3d 1068, 1080 (9th Cir. 2005).  A complaint may be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  However, "a complaint [does not] suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. (quotation marks and brackets omitted).  If a motion to dismiss is granted, a court should normally grant leave to amend unless it determines that the pleading could not possibly be cured by allegations of other facts. *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.,* 911 F.2d 242, 247 (9th Cir. 1990).

### DISCUSSION

#### A.  Count II: Intentional Fraud

Grant's intentional fraud count alleges that "Pensco sent account statements to Plaintiff and the Class Members stating that the SDIRAs had significant value when in fact the money had

---

[6] Grant identifies various Fraud Promoters in addition to Garfield Taylor. Compl. ¶ 20.  However, only Garfield Taylor is alleged to have defrauded Grant.  For clarity, this Order refers to Fraud Promoters when quoting from the Complaint or from Grant's briefing.  Otherwise the Order refers to Taylor and Gibraltar.

United States District Court
Northern District of California

been stolen." Compl. ¶ 82. Grant alleges that Pensco "falsely stated that the 'investments' made by Plaintiff and the Class Members were and would be safe, insured, accurately administered, and legally sound when in fact they were not." *Id.* Pensco further alleges that "Pensco knew that these statements were false when it made them," "intended for Plaintiff and the Class Members to rely upon its false statements," and that Grant "did rely on Pensco's false statements, and would never have invested in or continued to invest in SDIRAs with Pensco were it not for the false statements." *Id.* ¶¶ 83-85. Grant's Opposition confirms that his fraud allegations are based solely on Pensco's conduct *after* Grant made his investments in Gibraltar; he does not allege that Pensco's misrepresentations caused him to invest in the fraudulent investment schemes. Dkt. No. 20 at 7 n.2.

To plead fraud in California, plaintiffs must plead "a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." *Vess v. Ciba-Geigy Corp. USA*, 317 F. 3d 1097, 1105 (9th Cir. 2003) (quotation omitted). In addition, Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also Ness v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003) ("the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge") (quotation omitted). Generally, this means "the who, what, when, where, and how" of the misconduct. *Id.* Intent and knowledge may be alleged generally. "[C]laims of fraud or mistake ... must, in addition to pleading with particularity, also plead plausible allegations." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.,* 637 F.3d 1047, 1055 (9th Cir. 2011).

All of Grant's claims are grounded in fraud—that Pensco knew that Taylor had stolen Grant's money but continued sending false account statements to Grant in order to "maintain a significant revenue stream"—and are thus subject to Rule 9(b). *See Levine v. Entrust Grp., Inc.*, 12-cv-03959 WHA, 2013 WL 1320498, *4 (N.D. Cal. Apr. 1, 2013) ("All of plaintiffs' claims sound in fraud and rely on the intentional fraud claim, namely that defendant account administrators knew of third-party fraud and hid it from their account owners.").

United States District Court
Northern District of California

Grant's allegations are insufficient to state a claim for intentional fraud because he fails to adequately plead knowledge of falsity and reasonable reliance.

### 1.   Grant does not adequately plead knowledge of falsity

The Complaint generously pleads that Pensco knew that Grant's money had been stolen, yet kept reporting inaccurate account balances. *See, e.g.,* Compl. ¶¶ 6 ("Pensco knew that the Fraud Promoters were defaulting on loans, notes and other 'investments' included in the SDIRAs"), 54 ("Pensco knew that the investments of Plaintiff and the Class Members were completely illiquid and that the Fraud Promoters were misappropriating the money invested by Plaintiff and the Class Members.").  Grant argues that this is sufficient to plead knowledge of falsity.  He is mistaken.  While the rule that allegations of fraud based on information and belief do not satisfy Rule 9(b) may be "relaxed" as to matters peculiarly within defendants' knowledge, the allegations must be "accompanied by a statement of the facts upon which the belief is founded." *Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987).  Grant has provided no basis for his belief that Pensco knew that Taylor had stolen his money.  His failure to do so is fatal to his fraud claim.

In a case asserting substantially similar allegations, the plaintiffs alleged that the defendant SDIRA custodians knew of the fraudulent investment schemes based on complaints from the defendants' customers that the customers were unable to reach the promoters of the fraudulent investment schemes or were unable to liquidate their accounts. *Levine*, 2013 WL 1320498.  The Court explained that "[t]his purposefully vague allegation, the key to plaintiffs' claims, does not give rise to a plausible inference that each defendant knew that [the promoters of the fraudulent investment schemes] had stolen the investments and that the account statements reflected false values when they were issued." *Id.*  Rather, "[t]he basis for the allegations must be given as well." *Id.* at *5.  Grant's knowledge of falsity allegations are even sparser than those rejected in *Levine* and are insufficient to state a claim for fraud.

### 2.   Grant does not adequately plead justifiable reliance

Grant's Complaint relies on the theory that Pensco was obligated to report the fair market value of the SDIRAs.  Compl. ¶ 5.  Without elaboration, the Complaint cites IRS Forms 5498 and

6

1   1099-R for this purported duty. *Id.* ¶ 49. The Complaint also alleges that Pensco "failed and

2   refused to ascertain" the [fair market value] of the SDIRAs," but does not provide any source for

3   the alleged duty to ascertain the fair market value. *Id.* Grant attempts to cure this deficiency in his

4   Opposition brief, citing 26 C.F.R. § 1.408-2(e)(5)(ii)(E) for the proposition that Pensco is

5   obligated "to ascertain and report the fair market value of the SDIRAs owned by Plaintiff and the

6   Class Members through a 'qualified, independent third party.'" Dkt. No. 20 at 3 (emphasis

7   added).

8           Grant's argument is contradicted by the terms of the Custodial Agreement governing his

9   SDIRA with Pensco.[7] The agreement explains how Pensco reports the values of its clients'

10  investments and specifically notes that

11              Pensco Trust shall have no responsibility to conduct or arrange for
                any appraisal of any asset or to verify any value reported to it by the
12              issuer or sponsor of the asset. An account statement reflecting the
                value of any such asset may not be relied upon as a basis for
13              determining the intrinsic, current or market value of such asset, or
                for making, retaining or disposing of any investment or of entering
14              into any transaction . . . . The Depositor shall have sole
                responsibility for determining the value of the asset for any of the
15              foregoing purposes.

16  Dkt. No. 14-2 page 13 of 28 ¶ 12(b). The Custodial Agreement thus explicitly refutes Grant's

17  argument that Pensco owed him a duty to ascertain the value of his investments, through a

18  "qualified, independent third party" or otherwise.

19          Nor do the authorities cited in Grant's Complaint and in his Opposition support his

20  argument. 26 C.F.R 1.408–2(e)(5)(ii)(E) relates to trustees of IRAs, not custodians. *See* 26

21  C.F.R. § 1.408–2(e) (providing that "trustee" of an IRA may be a person other than a bank if the

22  requirements of paragraph (e)(2) to (e)(6) of are satisfied). The Court previously explained that 26

---

[7] The Custodial Agreement is incorporated into the Complaint and Grant's claims rely on it. *See e.g.,* Compl. ¶¶ 16, 28, 66, 67, 98, 100. The Custodial Agreement is thus properly before the Court. *Coto Settlement v. Eisenberg*, 593 F. 3d 1031, 1038 (9th Cir. 2010) ("We have extended the doctrine of incorporation by reference to consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance.").

*United States District Court*
*Northern District of California*

C.F.R 1.408–2(e)(5)(ii)(E) does not impose on SDIRA custodians a duty to perform a fair market valuation of the SDIRAs "because (1) it only required those applying to be *trustees* to perform a fair market valuation of all the assets held in trust, not each individual self-directed IRA and (2) defendants are *custodians*, not trustees, and are therefore not implicated by this regulation." *Levine*, 2013 WL 2606407, *3 (emphasis in original).  As in *Levine*, the defendant here, Pensco, is a custodian, not a trustee, and the regulation thus does not impose on Pensco a duty to perform a fair market valuation of the SDIRAs.  *See, e.g.,* Compl. ¶¶ 1 (defining Pensco as the "Custodian"), 50 ("PENSCO failed and/or refused to comply or abide by the regulatory requirements applicable to Custodians of SDIRAs in the rendition of their services as Custodian to Plaintiff").

Grant makes no effort to explain how IRS Forms 5498 or 1099-R impose a duty on Pensco ensure the fair market value of SDIRAs.  If Grant claims that Pensco "had a duty to seek out fraud or reveal fraud, [he] must plead facts that show these duties existed at the critical times."  *Levine*, 2013 WL 1320498 at *5.  He has not done so.

Given that SDIRA custodians have no duty to ascertain the value of investments, the SEC has cautioned that "investors should be mindful of potential fraudulent schemes when considering a self-directed IRA."  Dkt. No. 14-4 at 1 (SEC Office of Investor Education and Advocacy, Investor Alert: Self-Directed IRAs and the Risk of Fraud (Sept. 2011)[8]).  Specifically, the SEC has cautioned that

> self-directed IRA custodians are responsible only for holding and administering the assets in a self-directed IRA. Self-directed IRA custodians generally do not evaluate the quality or legitimacy of any investment in the self-directed IRA or its promoters . . . .  As a result, self-directed IRA custodians often list the value of the investment as the original purchase price, the original purchase price plus returns reported by the promoter, or a price provided by the promoter. *Investors should be aware that none of these valuations necessarily reflect the price at which the investment could be sold, if at all.*

*Id*. at 2 (emphasis added).  The Court has explained that "Given this statement from the SEC and the self-directed nature of the accounts, it is not plausible that plaintiffs as a general matter would

---

[8] Available at http://www.sec.gov/investor/alerts/sdira.pdf

United States District Court
Northern District of California

1    rely on defendants to seek out fraud or to perform fair market valuations." *Levine*, 2013 WL

2    1320498, *5.  Accordingly, Grant fails to adequately plead justifiable reliance.

3        **B.  Count III: Conspiracy**

4        Grant alleges that "PENSCO was engaged in a conspiracy with the Fraud Promoters to

5    obtain money and property from Plaintiff and the Class Members through fraudulent means,

6    including the fraudulent misstatements alleged herein."  Compl. ¶ 89.  Grant further alleges that

7    "Pensco agreed to commit the unlawful acts set forth herein, and the other violations of the law

8    which were intended to advance and which did in fact advance and facilitate the objectives of the

9    conspiracy." *Id*. ¶ 90.  Pensco argues that these allegations, and the related allegations throughout

10   the Complaint, fail to allege conspiracy with the particularity required by Rule 9(b).  In particular,

11   Pensco notes that Grant fails to allege who the supposed members of the conspiracy are and what

12   Pensco supposedly agreed to do in furtherance of the conspiracy.  Pensco also contends that

13   Grant's allegation that Pensco "is, and for 19 years has been, in league with Fraud Promoters

14   defies reason," and is fatally implausible.  Dkt. No. 14 at 15.

15       In his Opposition, Grant argues that he has adequately pleaded Pensco's role in the

16   conspiracy, namely, that

17   • "Pensco permitted Fraud Promoters to advertise their investment funds on Pensco's
18     website and in seminars, conferences and Webinars sponsored by Pensco;"

19   • "Pensco knew that the Fraud Promoters were stealing the money invested by Plaintiff
20     and the Class Members;"

21   • Pensco allowed the "Fraud Promoter to provide the [fair market value] of the assets of
       the SDIRAs of their victims rather than obtaining those valuations from a qualified,
22     independent third party as required by the law;" and

23   • Pensco sent account statements to Plaintiff and the class members that falsely
       represented that the accounts were "increasing value and secure" when in fact the
24     money had been stolen.

25   Dkt. No. 20 at 11.

26

27       The elements of an action for civil conspiracy are (1) formation and operation of the

28   conspiracy and (2) damage resulting to plaintiff (3) from a wrongful act done in furtherance of the

United States District Court
Northern District of California

9

common design.  *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1062, 128 P.3d 713, 722 (2006).  In addition, where the alleged conspiracy is to defraud, as it is here, a plaintiff must also allege the elements of actionable fraud.  *High v. Choice Mfg. Co.*, C-11-5478 EMC, 2012 WL 3025922 (N.D. Cal. July 24, 2012) ("For conspiracy to defraud—a plaintiff must allege all the elements of actionable fraud as well as a civil conspiracy.").

As noted above, Grant has failed to plead that Pensco's representations were fraudulent or that Pensco failed to comply with any obligation.  This alone defeats the conspiracy claim as the claim is grounded in fraud.  But separate from his failure to plead fraud, Grant has also failed to plead even the shadow of a conspiracy claim.  Crucially, there is no factual allegation sufficient to infer that Pensco agreed to commit any acts in concert with Gibraltar, Taylor or any other Fraud Promoter.  Given the dearth of factual allegations, Judge Alsup's admonition in *Levine* is equally apt here: "It is pointless to march through this blunderbuss, cookie-cutter pleading, evidently used as a template by the same counsel in several other recent actions, and to make rulings on important issues of law with so poor a record."  *Levine v. Entrust Grp., Inc.*, C 12-03959 WHA, 2012 WL 6087399 (N.D. Cal. Dec. 6, 2012).

### C. Count I: Conversion

To the extent that Grant's first count alleges that Pensco is directly liable for conversion, that claim fails for failure to allege the required element that Pensco exercised dominion over Grant's property.  *In re Emery*, 317 F.3d 1064, 1069 (9th Cir. 2003) ("Under California law, conversion is the wrongful exercise of dominion over another's personal property in denial of or inconsistent with his rights in the property."); *Levine*, 2013 WL 1320498, at *7 ("Plaintiffs' claim for conversion fails because it fails to allege the required element that defendants had control of plaintiffs' property.").

Grant's apparent claim that Pensco aided and abetted Taylor's conversion also fails.  Grant alleges that "Pensco aided and abetted Ponzi schemes and other fraudulent conduct that *permitted the Fraud Promoters to exercise unauthorized dominion and control over the property* of Plaintiff and the Class Members."  Compl. ¶ 77 (emphasis added).  Grant's Opposition clarifies that this aiding and abetting claim is based on the same alleged conduct by Pensco as the conspiracy claim.

10

1   *See* Dkt. No. 20 at 13 (asserting that Grant has adequately alleged that Pensco aided and abetted

2   the conversion because "[a]s discussed above in support of Plaintiff's conspiracy allegations,

3   Plaintiff has described in detail the precise acts Pensco performed and failed to perform").

4   Consequently, to the extent that Grant in fact alleges that Pensco aided and abetted Gibraltar's

5   conversion of Grant's funds, this claim fails for the same reasons as Grant's conspiracy claim.

6        Grant's Opposition argues for the first time that the $204 in fees that Pensco collected from

7   Grant for "managing and administering" his SDIRA "are a sufficient basis for a conversion

8   claim." Dkt. No. 20 at 13. Doubtful. In any event, that is not the basis for conversion pleaded in

9   the Complaint and the Court will not consider it here.

10        **D.   Count IV: Unfair competition**

11        Grant alleges a violation of California's Unfair Competition Law ("UCL"), Cal. Bus. &

12   Prof. Code § 17200, *et seq*, based on the same alleged fraudulent conduct as Grant's fraud cause of

13   action. *See* Compl. ¶¶ 101-04. Consequently, Grant argues that "[he] has stated a valid UCL

14   claim because his other claims are proper." Dkt. No. 20 at 14. As described above, Pensco's

15   other claims are *not* proper, and his UCL claim likewise fails. *See Tyler v. PNC Bank, Nat. Ass'n*,

16   10-cv-3415-PJH, 2011 WL 1750798 (N.D. Cal. Apr. 22, 2011) ("To the extent that plaintiff

17   reincorporates the facts underlying his fraud cause of action into his § 17200 claim, the § 17200

18   claim is not sufficiently pled with particularity, as discussed above.").

19        **E.   Count VI: Negligent misrepresentation**

20        Grant's negligent misrepresentation claim alleges that "Pensco owed a duty to Plaintiff and

21   Class Members to accurately report the status of their SDIRA accounts, both to the Plaintiff and

22   Class Members themselves and to the Internal Revenue Service due to the tax consequences

23   related thereto." Compl. ¶ 119. Grant further alleges that "Pensco had a duty not to affirmatively

24   make representations which it knew or should have known were not true, such as sending out

25   account statements which did not reflect the true value of SDIRAs." *Id.* ¶ 120.

26        The elements of a claim for negligent misrepresentation under California law are: (1) a

27   misrepresentation of a material fact; (2) without reasonable grounds for believing it to be true; (3)

28   intent to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Stearns v. Select*

United States District Court
Northern District of California

*Comfort Retail Corp.*, No. 08-2746-JF, 2009 U.S. Dist LEXIS 48367, at *36 (N.D. Cal. June 5, 2009). Thus, unlike fraud, a claim for negligent misrepresentation does not require knowledge of falsity; a lack of reasonable grounds for believing the misrepresentation to be true is sufficient to state a claim. Negligent misrepresentation is a claim based in fraud and thus is subject to the heightened pleading requirements of Rule 9(b). *Id*.

As noted above, Grant has not adequately pleaded Grant's reasonable reliance or that Pensco had a duty to independently ascertain the market value of Grant's investments. His negligent misrepresentation claim thus fails.

## CONCLUSION

For the reasons stated above, Pensco's motion to dismiss is GRANTED with leave to amend.


**IT IS SO ORDERED**.

Dated: September 3, 2013



_____
WILLIAM H. ORRICK
United States District Judge