UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMMANUEL GRANT,<br><br>    Plaintiff,<br><br>    v.<br><br>PENSCO TRUST COMPANY, LLC,<br><br>    Defendant. | Case No. 12-cv-06084-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 42 |

Plaintiff Emmanuel Grant lost more than $600,000 in a Ponzi scheme orchestrated by a third party. Grant used a Self-Directed Individual Retirement Account ("SDIRA") administered by defendant Pensco Trust Company, LLC to invest in the scheme and seeks to hold Pensco liable for his losses. Because Pensco owed no fiduciary duty to Grant, and the written agreement between the parties contradicts Grant's allegations, I will dismiss Grant's first amended complaint with prejudice.

## BACKGROUND[1]

In 2009, Grant learned of a potential investment opportunity with Fraud Promoter[2] Garfield Taylor and his investment company, Gibraltar Asset Management Group, LLC, through a friend that had invested with Gibraltar. FAC ¶ 37. Grant's friend said that he had consistently received a 20 percent return on his investments with Gibraltar for over a year. *Id.* Grant contacted

---

[1] I assume the truth of the factual allegations in the first amended complaint.

[2] Grant states that "'Fraud Promoters' is a term used by the SEC to describe individuals who devise and orchestrate Ponzi schemes to defraud innocent investors." FAC ¶ 5 n.2. Grant identifies various Fraud Promoters in addition to Taylor. *Id.* ¶ 5. However, only Taylor is alleged to have defrauded Grant. This order refers to Fraud Promoters when quoting from the FAC or from Grant's briefing. Otherwise, the order refers to Taylor and Gibraltar.

Taylor to discuss a potential investment. *Id.* ¶ 38. Taylor explained that Grant could make tax-free investments with Gibraltar through a SDIRA[3] and recommended defendant Pensco as a SDIRA custodian. *Id.* ¶ 39. Taylor told Grant that Gibraltar already had another investment client who invested with Gibraltar through a Pensco SDIRA. *Id.* Grant alleges that he was convinced to invest through Pensco's SDIRA by Fraud Promoters (presumably Taylor) who sold the illegal investments. *Id.* ¶ 5.

Sometime after August 2009, Grant transferred $683,776.20 from his retirement accounts to a Pensco SDIRA. *Id.* ¶ 41. In October 2009, Grant invested the money in his Pensco SDIRA with Gibraltar. *Id.* Grant's 2010 first quarter Pensco SDIRA statement reflected that Grant had received $33,673.06 in interest payments from his Gibraltar investments and reported his total value as $717,499.26. *Id.* ¶¶ 43-44. Pensco charged Grant $443.05 for account administration in June 2011. *Id.* ¶ 44. The SDIRA account statements that Pensco sent to Grant did not reflect the actual value of his investment because, in reality, Taylor stole Grant's money immediately upon receipt. *Id.* ¶¶ 42, 47.

On November 30, 2012, Grant filed the original complaint in this action, asserting causes of action for (i) conversion, (ii) intentional fraud, (iii) conspiracy, (iv) violations of the California Unfair Competition Law (Bus. & Prof. Code §17200 *et seq*), and (v) negligent misrepresentation. Dkt. No. 1. On September 13, 2013, I granted Pensco's motion to dismiss Grant's complaint with leave to amend. Dkt. No. 34.

On October 18, 2013, Grant filed a first amended complaint ("FAC"), alleging (i) breach of contract or rescission in the alternative and (ii) violations of the California Unfair Competition Law (Bus. & Prof. Code §17200 *et seq*). Dkt. No. 40. Grant seeks to represent two classes pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3):

> The first (the "First Class") is defined as all persons or entities who (from January 1, 2006 until the present, (the "Class Period"))

---

[3] SDIRAs are retirement accounts held by a trustee or a custodian. FAC ¶ 1 n.1. Investors in SDIRAs are permitted to invest in nontraditional investment options, which are not allowed under traditional IRAs. *Id.* ¶ 1 n.1. Pensco touts itself as a "premier self-directed IRA custodian." *Id.* ¶ 18.

2

>invested in or held an investment through a SDIRA administered by Defendant PENSCO and that was offered to invest, sold investments or solicited investments by the Fraud Promoters.
>
>The second (the "Second Class") is defined as all persons or entities who invested in or held an investment through a SDIRA administered by Defendant PENSCO during the Class Period who had uninvested cash in their SDIRAs that was invested, managed or distributed by PENSCO.

FAC ¶ 63.

## LEGAL STANDARD

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party," (*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008)), drawing all "reasonable inferences" from those facts in the nonmoving party's favor. *Knievel v. ESPN*, 393 F.3d 1068, 1080 (9th Cir. 2005). However, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A complaint may be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "a complaint [does not] suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotation marks and brackets omitted). If a motion to dismiss is granted, the Court should normally grant leave to amend unless it determines that the pleading could not possibly be cured by allegations of other facts. *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990).

## DISCUSSION

### I. COUNT I: BREACH OF CONTRACT OR RESCISSION

#### A. Breach of Contract

Grant's breach of contract claim is based on allegations that Pensco (i) ignored its duties as

3

custodian mandated by Internal Revenue Regulation 1.408-2(e)(5)(i) through (f), the Internal Revenue Code, and the Code of Federal Regulations; (ii) deposited money from account holders to accounts controlled by Fraud Promoters; (iii) failed to properly set forth and report the fair market value of the SDIRA assets annually and failed to report the value of any distributions to the SDIRA owner; (iv) continued to accept fees for administering accounts with no assets left in them; (v) sponsored seminars about the safety and profitability of investing in SDIRAs and permitted Fraud Promoters to advertise investment funds on Pensco's websites; and (vi) knowingly sent false and inaccurate investment account statements without verifying the fair market value of the SDIRA.  FAC ¶ 75.  Grant also alleges that Pensco acted as an active fiduciary "based, inter alia, on its unfettered discretion to control certain assets of the Plaintiff's and Class Member's SDIRA monies."  *Id*. ¶¶ 21, 33.

Grant fails to state a claim for breach of contract.  "[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff."  *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).  "A written contract may be pleaded either by its terms—set out verbatim in the complaint or a copy of the contract attached to the complaint and incorporated therein by reference—or by its legal effect.  In order to plead a contract by its legal effect, plaintiff must 'allege the substance of its relevant terms.'"  *Haskins v. Symantec Corp.*, No. 13-cv-01834-JST, 2013 U.S. Dist. LEXIS 169865, at *32 (N.D. Cal. Dec. 1, 2013) (quoting *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1489 (2006) (internal citations omitted)).

Grant does not attach his alleged contract with Pensco and fails to plead its terms or legal effect.  However, in connection with its motion to dismiss, Pensco submitted a custodial agreement that governs Grant's SDIRA with Pensco. Dkt. No. 42, Ex. A (the "custodial agreement").  At oral argument, Grant agreed that this is the relevant agreement for his breach of contract claims.  This is the same agreement that I considered in my dismissal of Grant's original complaint.  *See* Dkt. No. 34 at 7 n.7 ("The Custodial Agreement is incorporated into the Complaint and Grant's claims rely on it. The Custodial Agreement is thus properly before the

4

1 Court.") (citing *Coto Settlement v. Eisenberg*, 593 F. 3d 1031, 1038 (9th Cir. 2010)).

2 The custodial agreement provides that:

> Pensco Trust shall have no responsibility to conduct or arrange for any appraisal of any asset or to verify any value reported to it by the issuer or sponsor of the asset. An account statement reflecting the value of any such asset may not be relied upon as a basis for determining the intrinsic, current or market value of such asset, or for making, retaining or disposing of any investment or of entering into any transaction . . . The Depositor shall have sole responsibility for determining the value of any such asset for any of the foregoing purposes.

Custodial agreement at 10, ¶ 12(b). Contrary to Grant's allegations, the custodial agreement explicitly states that Pensco *does not* have a duty to ascertain the fair market value of Grant's SDIRA assets. Grant's assertion that Pensco breached duties to ascertain the fair market value of Grant's SDIRA annually and report the value of any distributions to the SDIRA owner therefore fails as a matter of law. Since Pensco had no duty to appraise or verify the value of the SDIRAs, Grant's contention that Pensco breached the custodial agreement by sending false and inaccurate account statements without verifying the fair market value of the SDIRA fails as well. Nor are there sufficient factual allegations to infer that Pensco knew that the account statements were false.

Grant claims that Pensco acted as a fiduciary. But the custodial agreement contradicts these allegations and the authorities that Grant cites do not support his proposition. In the order dismissing Grant's original complaint, I rejected Grant's argument that Pensco is a custodian with a duty to ascertain the value of investments. I stated that "26 C.F.R. 1.408–2(e)(5)(ii)(E) does not impose on SDIRA custodians a duty to perform a fair market valuation of the SDIRAs because (1) it only required those applying to be trustees to perform a fair market valuation of all the assets held in trust, not each individual self-directed IRA and (2) defendants are custodians, not trustees, and are therefore not implicated by this regulation." Dkt. No. 34. In addition, the custodial agreement itself states that Pensco is not Grant's fiduciary:

> PENSCO Trust shall act as custodian of the Custodial Account . . . NEITHER PENSCO TRUST NOR PENSCO, INC. IS A FIDUCIARY WITH RESPECT TO THE DEPOSITOR OR THE CUSTODIAL ACCOUNT. NOTHING IN THIS AGREEMENT IS

5

> INTENDED TO OR SHALL IMPOSE OR CONFER, BY IMPLICATION OR OTHERWISE, ANY FIDUCIARY DUTY OR RESPONSIBILITY ON PENSCO TRUST OR PENSCO INC.

Custodial agreement at 6, ¶ 3(d) (capitalized in original).

Grant's argument that the February 1993 IRS Interpretive Letter EP: R: 9, 2-23-93 imposes a duty on Pensco to ascertain the fair market value of his SDIRA is wrong. FAC ¶ 26. Grant alleges that the interpretive letter reiterates that the IRS "required the IRA trustee/custodian/issuer to report the correct fair market value of the assets it holds annually and that the trustees/ custodians/ issuers of IRAs were responsible for properly valuing the assets of the IRA" and that "the IRA trustee or issuer cannot evade valuation responsibility by having the participant sign a release, indemnification or other instrument, because the trustee's or issuer's responsibility for valuation derives from the IRS reporting requirements which cannot be waived by participant action." *Id*. But as an initial matter, the letter itself states that "[t]his is not a ruling, however, and may not be relied upon with respect to any specific transaction." In any event, the letter states that "the person responsible for insuring that an IRA's assets are properly valued is the IRA trustee *or* issuer." (emphasis added). It is undisputed that Pensco is not the issuer.[4] The custodial agreement specifically provides that Pensco "shall have no responsibility to conduct or arrange for any appraisal of any asset or to verify any value *reported to it by the issuer or sponsor of the*

---

[4] Grant argues that Pensco is a trustee. Pensco argues that it is not. I need not resolve this dispute because it is undisputed that Pensco is not the issuer. In any event, Pensco points to an August 1993 IRS letter which states:

> So long as the trustee reports the information that it receives from the partners, it is under no obligation to appraise the investment independently. . . . taxpayers who invest their IRA funds in non-publicly traded partnerships know that they have invested in risky ventures. . . . trustees who are obligated to report FMV [fair market value] do not have to determine value independently to fulfill their obligation under the Code.

Dkt. No. 43, Ex. A. Accordingly, to the extent that Pensco is a trustee, the August 1993 IRS letter specifically refutes Grant's argument that Pensco had a duty to ascertain the fair market value of the investments in his SDIRA.

*asset.*" Custodial agreement at 10, ¶ 12(b) (emphasis added). Accordingly, even if the IRS letter governed this matter, it would not require Pensco to ascertain the fair market value.

Grant also contends that "PENSCO exercised discretion and therefore, Pensco is more than only a Custodian." Opp'n at 13 (citing FAC ¶¶ 31-36). He claims that "PENSCO decided where the cash went, on what terms, for what costs, and (importantly for PENSCO) how that cash would benefit PENSCO. That is the exercise of discretion." Opp'n at 14. Grant further argues that "there is strong judicial doctrine that the giving of advice and exercise of discretion in a customer's account raises a fiduciary duty, and is beyond the zero discretion and rule-following actions of only a Custodian." *Id.* But Grant cites no authority supporting this proposition.[5] Moreover, Grant's factual allegations contradict his assertion that Pensco "decided where the cash went." He alleges that "*Grant*, through his PENSCO SDIRA invested $683,776.20 with Gibraltar" in October 2009. FAC ¶ 41 (emphasis added). Grant does not allege that Pensco, without Grant's permission, invested the funds with Gibraltar. Nor does Grant allege that Pensco gave advice or moved his funds in ways not consistent with his instructions or the custodial agreement.

At the motion hearing, Grant argued that Pensco moved from a passive custodian to a fiduciary because Pensco selects the banks in which to deposit un-invested cash and charges fees on the earnings of the deposited cash and for finding the banks. However, under the custodial agreement, Grant specifically agreed that:

> Depositor [Grant] hereby directs PENSCO Trust to sweep all undirected and un-invested cash from any source, including but not limited to contributions, transfers and income cash from assets in the Custodial Account, into a cash reserve account ("CRA"), and then deposit such CRA-swept cash into one or more FDIC-insured banks

---

[5] Grant cites a line of cases supporting the "long-settled rule that a stockbroker owes a fiduciary duty to his or her customer." Opp'n at 14. However, as Grant concedes, Pensco is not a stockbroker. *Id.* Grant's reliance on these cases is misplaced.

that PENSCO Trust chooses.

Custodial agreement at 7, ¶ 4. Grant cites no authority for the proposition that discretion to choose which FDIC-insured bank to deposit his undirected and un-invested cash or the charging of fees to provide such service gives rise to a fiduciary duty. In any event, Grant's un-invested cash is wholly unrelated to the claims in his complaint. As noted above, there is no dispute that Grant, not Pensco, decided to invest Grant's funds with Gibraltar.

Grant's allegation that Pensco breached the custodial agreement by "continuing to accept fees for administering accounts with no assets left in them" also fails. The custodial agreement obligated Grant to pay these fees and Grant authorized Pensco to collect them. *See* custodial agreement at 11, ¶ 16.

Grant also alleges that Pensco breached the agreement by "sponsoring seminars about the safety and profitability of investing in SDIRAs and permitting Fraud Promoters to advertise investment funds on Pensco's websites." Grant does not explain how these acts allegedly constitute a breach. I see nothing in the custodial agreement barring Pensco from sponsoring seminars about investing in SDIRAs or barring Pensco from permitting investment promoters to advertise their investments on Pensco's websites. This claim therefore fails.

**B. Rescission**

In the alternative, Grant seeks rescission of the custodial agreement on the grounds of (i) fraud in the inducement, (ii) failure of performance, or (iii) failure of consent or assent. Opp'n at 11.

Fraud in the inducement occurs when "the promisor knows what he is signing but his consent is induced by fraud, mutual assent is present and a contract is formed, which, by reason of the fraud, is voidable." *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 415 (1996) (quotation marks and internal citations omitted). Since Grant's fraud in the inducement claim sounds in fraud, this claim is subject to Federal Rule of Civil Procedure 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting

fraud or mistake." *See also Ness v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("the circumstances constituting the alleged fraud [must] be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge") (quotation omitted). Generally, this means "the who, what, when, where, and how" of the misconduct. *Id.* Grant does not allege any facts indicating that Pensco induced his consent to the custodial agreement by fraud or that Pensco's alleged misrepresentations caused him to invest in Taylor's fraudulent investment scheme with Gibraltar.[6] Grant's claim for rescission based on fraud in the inducement therefore fails.

None of the other possible bases for Grant's claim for rescission work either. If based on failure of performance, the claim rests on the same alleged conduct as his breach of contract claim. As described above, Grant fails to state a claim for breach of contract, so his claim for rescission based on failure of performance likewise fails. If based on failure of consent or assent, it fails because he does not allege any facts to support this claim. To the extent that this claim is duplicative of the fraud in the inducement claim, it fails for the same reasons.

## II. COUNT II: UNFAIR COMPETITION

Grant alleges a violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq,* based on the same alleged conduct as Grant's breach of contract cause of action. *See* FAC ¶¶ 83-99. Grant argues that he has stated a valid UCL claim because "[t]he allegations of the FAC, referencing multiple violations of law and regulation, strongly support a UCL violation allegation." Opp'n at 18.

To establish a violation of the UCL, a plaintiff may plead a violation under one of three prongs of the law: the unlawful prong, which requires the allegation of violation of some underlying law as a predicate act; the unfair prong, which requires a plaintiff to meet one of three tests for; and the fraudulent prong, which alleges a business act that is likely to deceive members

---

[6] On the contrary, Grant alleges that Taylor and the Fraud Promoters recommended Pensco and Pensco's SDIRAs to Grant. FAC ¶ 5 ("Plaintiff and the Class Members were convinced to invest through PENSCO SDIRAs *by the Fraud Promoters who sold the illegal investments*.") (emphasis added); FAC ¶ 39 ("Taylor recommended PENSCO to Grant. . .").

of the public. *See Perez v. Wells Fargo Bank, N.A.*, 929 F. Supp. 2d 988, 1003 (N.D. Cal. 2013).

To the extent that Grant pleads a violation under the unlawful prong, Grant's UCL claim fails because those claims rely on the allegations for breach of contract and rescission which are dismissed for failure to state a claim.

The California Courts of Appeal are split as to the test that determines whether a business practice is unfair. The court in *Drum* v. *San Fernando Valley Bar Association* described the three tests for the unfair prong:

> The test applied in one line of cases . . . requires that the public policy which is a predicate to a consumer unfair competition action under the "unfair" prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions.
> . . .
> The test applied in a second line of cases is whether the alleged business practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim.
> . . . .
> The test applied in a third line of cases draws on the definition of "unfair" in section 5 of the Federal Trade Commission Act (15 U.S.C. § 45, subd. (n)), and requires that (1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided.

182 Cal. App. 4th 247, 256-57 (2010) (internal citations omitted). Grant asserts no specific allegations nor advances specific arguments establishing that he has stated a claim under the unfair prong. He simply incorporates his allegations for breach of contract and rescission and argues generally that "the allegations of the FAC, referencing multiple violations of law and regulation, strongly support a UCL violation allegation." Opp'n at 18. Grant's allegations do not support any of the causes of action he asserts. Therefore, Grant has not established that he has stated a claim for unfair business practice under any of the three tests outlined above.

Grant's UCL claim under the fraudulent prong likewise fails as Grant has not alleged any fraudulent conduct by Pensco. As I stated previously, Pensco is a custodian, not a fiduciary.

Pensco's custodial agreement clearly discloses the terms of its service. Grant alleges that Pensco permits Fraud Promoters to advertise investment funds on Pensco's websites. FAC ¶¶ 11, 75. But there are no factual allegations sufficient to infer that Pensco knew or had reason to know that its website advertisers promoted fraudulent investments. Grant's allegations therefore do not satisfy the heightened pleading requirements of Rule 9(b). *See Hodges v. Apple Inc.*, No. 13-cv-01128-WHO, 2013 U.S. Dist. LEXIS 179143, at *9-10 (N.D. Cal. Dec. 19, 2013) (claims under the UCL's fraudulent prong are subject to the higher pleading requirements of Rule 9(b)).

### III. DISMISSIAL WITH PREJUDICE

Grant asserted mainly tort theories in the original complaint, and mainly contract theories in the amended complaint. None state a claim. At the hearing on this motion, I gave Grant's counsel the opportunity to describe any additional factual allegations that may cure the defects described above. He was unable to provide any. Given that Grant's complaint depends on establishing that Pensco owed him a fiduciary duty or acted fraudulently, which he apparently cannot allege plausibly, further amendment would be futile. Grant's first amended complaint is therefore DISMISSED WITH PREJUDICE.

### CONCLUSION

Pensco's motion to dismiss is GRANTED. Grant's first amended complaint is DISMISSED WITH PREJUDICE.

**IT IS SO ORDERED**.

Dated: April 15, 2014

WILLIAM H. ORRICK
United States District Judge